ORDER
 

 SHOOB, .Senior District Judge.
 

 On March 26, 1996, the Court entered an Order granting plaintiffs’ motion for summary judgment as to defendants’ failure to prepare Total Maximum Daily Loads (“TMDLs”) for Georgia. Pursuant to that Order, the parties have subsequently briefed the issue of the appropriate remedy for defendants’ TMDL violations.
 
 [1]
 
 Having carefully considered those briefs and all submissions of record, and to establish the basic parameters of a short term and long term TMDL process, to provide defendants the opportunity to utilize the resources of the State of Georgia and coordinate defendants’ TMDL program with the State’s River Basin Management Program, and to ensure that defendants are ultimately responsible for compleL ing each step in the process,
 

 IT IS HEREBY ORDERED that:
 

 
 *873
 
 TMDL DEVELOPMENT
 

 1) Defendant United States Environmental Protection Agency (“EPA”) shall establish TMDLs for all Water Quality Limited Segments (“WQLSs”) identified in Georgia’s existing and future lists submitted under § 303(d) of the Clean Water Act (“CWA”) (hereinafter the “§ 303(d) WQLS list”), for all pollutants of concern on each WQLS (i.e., the pollutants causing the impairment of the WQLS).
 

 2) The TMDLs established by EPA shall establish daily loads and shall account for seasonal variations.
 

 3) To allow EPA the option of coordinating its establishment of TMDLs with the State of Georgia’s River Basin Management Plan (“RBMP”), the following schedule will apply to EPA:
 

 State’s RBMP Schedule (for Development of 2 TMDLs per basin)
 

 Court’s Schedule (for Development of TMDLs for all WQLSs in a Basin)
 

 Basin State Due Date EPA Due Date
 

 Chattahoochee and Flint 1996 June 30,1997
 

 Coosa, Tallapoosa and Tennessee 1997 June 30,1998
 

 Savannah and Ogeeehee 1998 June 30,1999
 

 Ochloehonee, Suwanee, Satilla and St. Mary’s 1999 June 30, 2000
 

 Oconee, Ocmulgee and Altamaha 2000 June 30,2001
 
 [2]
 

 4) If EPA does not follow the river basin approach of the RBMP, EPA’s establishment of TMDLs shall occur on a schedule of no less than 20% of the total number of TMDLs per year for five years, so that all TMDLs are established within five years of the date of this Order.
 

 5) This Order contemplates that EPA will ensure that the State properly establishes TMDLs for all waters specified in the time specified, or EPA will itself establish the TMDLs.
 
 [3]
 

 6) To effectuate this Order, EPA may approve and adopt as its own TMDLs established by the State of Georgia, if they meet the statutory and regulatory requirements for TMDLs.
 

 7) The TMDLs will be established by the time specified after providing an opportunity for public comment in the TMDL establishment.
 

 TMDL IMPLEMENTATION
 

 8) To ensure that the TMDLs are used to improve water quality, EPA shall implement (or ensure that the State implements) TMDLs through the NPDES permitting program. This includes the following:
 

 a) Once the TMDL is established, EPA shall (or ensure that the State shall) cause the modification, revocation and reissuance, or termination of permits where appropriate as necessary to implement the TMDLs, within one year of the TMDL establishment,
 
 *874
 
 pursuant to 40 CFR §§ 124.5 and 122.62 and likewise modify general permits as necessary to implement the TMDLs pursuant to 40 CFR § 122.28;
 
 [4]
 

 b) EPA shall (or ensure that the State shall) comply with 40 CFR § 122.4(i) regarding the prohibition on new sources or new dischargers that will cause or contribute to a violation of water quality standards, requiring new permitees or new dischargers to demonstrate that there are sufficient load allocations to allow for the discharge and requiring that the existing dischargers into that segment are subject to compliance schedules designed to bring the WQLS into compliance with applicable water quality standards.
 

 9) All permits on basins will be subject to modification, revocation, reissuance or termination simultaneously, as necessary to implement the TMDLs.
 

 10) EPA shall take TMDLs into account in its review of Georgia’s NPDES program and, to implement TMDLs, EPA shall review and require revision, modification, revocation or reissuance as necessary of Georgia’s Water Quality Management Plans (40 CFR §§ 130.6, 130.7 and 130.10); Georgia’s Continuing Planning Process (CWA § 303(e); 40 CFR §§ 130.10 and 130.7); and any Memoranda of Agreement between EPA and the State of Georgia on water quality issues.
 

 11) If Georgia fails to implement TMDLs through the NPDES process, or EPA is otherwise unable to implement the TMDLs through the permit program described above due to State actions or inactions, EPA shall initiate procedures to revise the State NPDES program to incorporate the TMDL process pursuant to 40 CFR § 123.62. If the State refuses to implement TMDLs through the NPDES process, EPA shall withdraw certification of the State NPDES program, pursuant to CWA § 402(c)(3), 33 U.S.C. § 1342(c)(3) and 40 CFR § 123.63(a)(5) (withdrawal permitted where the State has not “developed] an adequate regulatory program for developing water-quality based effluent limits in NPDES permits”).
 

 REPORTING
 

 12) On December 31st of each year, EPA shall submit to plaintiffs and the Court a report detailing the EPA’s progress in developing and implementing TMDLs for Georgia’s WQLSs. The report shall include at a minimum:
 

 a) Identification of TMDLs developed during the reporting period;
 

 b) Review of steps taken during the reporting period to implement the TMDLs;
 

 c) Review of EPA’s compliance with the terms of the settlement reached between the parties requiring EPA review and development of Georgia’s § 303(d) WQLS list;
 

 d) Review of public participation opportunities offered in the TMDL implementation process;
 

 e) Review of the effectiveness of the TMDLs and implementation strategies in achieving water quality standards;
 

 f) Review of the State’s involvement and cooperation in the TMDL development and implementation process.
 

 CONTINUING JURISDICTION
 

 13) The Court shall retain jurisdiction over this ease generally and as specifically identified in this order. However, after a two year period, upon application by the EPA and demonstration of a good faith effort to comply with this order, the Court will consider terminating jurisdiction over this case. The parties are directed to attempt to settle or proceed through mediation to resolve any disputes prior to submitting disputes for resolution by the Court.
 

 
 *875
 
 ATTORNEYS FEES, COSTS AND EXPENSES
 

 14) The Court finds that plaintiffs are the prevailing party under § 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and are entitled to reasonable attorney and expert witness fees, costs and expenses of litigation. The Court directs the parties to attempt to agree on the amount to be awarded. If the parties cannot reach agreement, then plaintiffs shall submit the amount claimed, with any supporting materials, to the Court within 60 days of the date of entry of this order. Defendants may file any objections to the amount claimed by plaintiffs within 20 days after submission of that amount to the Court.
 

 IT IS SO ORDERED.
 

 [1]
 

 . The parties have reached an agreement to settle the Water Quality Limited Segment (“WQLS'') portion of the case.
 

 [2]
 

 . The Tennessee basin is grouped by the State with the Coosa and Tallapoosa basins for the RBMP process. While the State plans assessment and the development of two TMDLs each for the Coosa and Tallapoosa by 1997, it does not plan this for the Tennessee until 2002. This Order has the Tennessee being covered by EPA by 1998. The RBMP schedule also proposes that the Oconee be subject to assessment and development of two TMDLs by 1997, and again with the Ocmulgee and Altamaha in 2000. This Order has the Oconee being covered by EPA by 2001.
 

 [3]
 

 . As set out in the Clean Water Act, TMDLs shall incorporate “a margin of safety which takes into account any lack of knowledge.” 33 U.S.C. § 1313(d)(1)(C).
 

 [4]
 

 . If at any time it appears EPA has not followed the schedule for TMDL development set out above, the Court wiE consider a modification of this order to provide that EPA wiE not allow any new permits to be issued for, and no existing permittee wiE be aEowed to increase permitted discharges of, a poEutant of concern on a WQLS untU a TMDL is estabfished for the WQLS for that poEutant.